Proceed to our fourth and final case, number 12-2360, Cosey v. Prudential Insurance Company of America. Mr. Adams, we'll be glad to hear from you whenever you're ready, sir. May it please the Court, good morning, Your Honors. My name is Norris Adams. I'm here representing Beth Cosey, the appellant in this matter in what appears to be the Court's only civil matter of the day. At least for this panel. This case presents a fairly typical factor in ERISA benefit claims. Excuse my voice, I'm having allergies this week, and if I start coughing, I'll grab the water. I'm with you. I'm suffering as well. In this case, it's like many other benefit claims under ERISA, we have a claimant that has a disease or diseases. There's not really a question about that. These diseases cause some sort of symptoms, pain, fatigue. The plan administrator armed with a report from a reviewer, usually a vocational reviewer or medical reviewer, acknowledges the diagnosis, but then refuses for whatever reason to credit the diagnosis when determining whether or not to award disability benefits. The examples I can think of, one for each of vocational would be that they can still meet the restrictions and limitations of the job. A medical would be that subjective symptoms don't equate with the objective evidence available. I think we have both of those here. Also typical in most ERISA benefits cases is, in this case, the standard of review is an important consideration for the Court. If the plan has given itself discretion and done so adequately, an abuse of discretion standard of review applies. If it doesn't, then the default de novo standard of review applies. Here, Ms. Cozy has two claims, a short-term disability claim that was terminated and a long-term disability claim that was denied. There's two potential standards of review that would be applied, one to each claim. I want to briefly talk about each of those. With respect to the short-term disability claim, at the district court below, the parties agreed that the claim was not governed by ERISA. The short-term disability claim was not governed by ERISA, such that ordinary breach of contract principles applied to it. I was a little surprised you didn't pray a jury trial on that. Your Honor, we actually didn't get deep into that until, as a matter of fact, I argued that it was non-ERISA all through summary judge briefing. It wasn't until summary judge briefing closed that Prudential filed a brief. They fought that argument. It wasn't until after summary judgment briefing closed that they filed a brief with the court that said, wait, you're right, it is not governed by ERISA. My point is, and I don't mean it as criticism, but when you file the complaint, I mean, in fact, I see a lot of ERISA claims, counsel will often pray a jury trial just sort of out of an abundance of, some might say silliness, or some might say caution. You never know what might happen. But anyway, I don't want you to spend your time on that. I had, before the administrative record was submitted during the litigation, if I had figured that out, I probably would have. But it was well within the litigation that I did. So, all parties agree that the breach of contract, ordinary North Carolina principles of contract construction apply. And the district court, I thought, a couple of reaches in order to get to where it got, which was that an abusive discretion standard applied, even when ERISA didn't, to the term disability claim. What the district court did was, it applied a case from the Seventh Circuit that said, if we can look, even though ERISA doesn't apply, if we can look to the four corners of the contract and figure an intent to apply a discretion, we're going to go ahead and do that anyways, even though it's not ERISA. So the court looked at the contract, and the only, well, actually the court just decided without deciding that there was not an adequate grant of discretion in the contract, but I think Gallagher supports that decision. So the court said, I'm going to take it a step beyond having not found discretion within the contract. I'm going to go a step beyond and apply ERISA precedent that says, and actually older ERISA precedent now, that says I can look at other documents that are between the parties that are associated, and if I can find discretion there, then I can apply it here. So what the court did was, it looked at the administrative services agreement, based on ERISA precedent that said other documents can be part of the plan documents, and it found discretionary authority there. Let me ask you this. Am I right that somewhere in here, Judge Schroeder said, even if de novo standard of review applies, for me the outcome is exactly the same? He did, Your Honor, yes. So in that light, where does that leave us? Assume hypothetically that we agree with you that for both the short term and the long term, it's de novo and not abuse of discretion. Yes, Your Honor. Where does that leave us in light of the district courts? Well, Your Honor, I think I would go, I would almost turn that back at you and say even under an abuse of discretion standard, I think Judge Schroeder's wrong in this case. So certainly under de novo review, just looking at the evidence that was presented by both sides, I think Ms. Cozy has a very strong case for both short term and long term. I'll accept that. A strong case. But where does that leave us? Are you asking us, and I think I know the answer to this, are you asking us, assuming we agree with you that it's de novo, to rule as a matter of law, as they say in the Fifth Circuit, to render? Of course, we got that preexisting condition issue floating around. But I guess my question is, does it go back to him, does it go back to the district court, at least go back to the district court, if we agree with you that it's a de novo standard? Or do we say, well, the judge has looked at it very carefully. It's an ERISA case. It's not a jury trial. He said even if he applied a de novo standard, you see what I'm, I guess I'm not asking the question in a very articulate way. I think this court can order reinstatement. I mean, it goes back to judge, it goes back to the district court in any event, right, if we agree with you. Because the preexisting condition issue needs to be addressed. I mean, I think you agree with that. I think that it certainly was not addressed by the district court. Right. I think the appellees would argue that, I think their argument is, and I don't mean this from Mr. DiCarlo, he's more than capable of doing that himself. I think their argument is that this court can decide it as a first blush. I, in my briefing, tended to disagree with that. And I do think that probably the district court has to have the first shot at that. Okay. As a preliminary matter, just on preexisting. So would it make sense, if we agree with you, I'm just speaking hypothetically, that it's de novo on both short-term and long-term. Are you arguing to us that we should send it back for a do-over under a de novo standard? Or are you arguing, don't send it back, please don't send it back, I ask you not to send it back, decide it for yourself, because as a matter of law, she's entitled to benefit. Your Honor, I think that, I do think that this court can order reinstatement of her short-term and order the district court to order the plan administrator to give her disability benefits. The preexisting condition. On the basis that she's entitled to benefits as a matter of law? As a substantive matter based on her, the evidence that was presented below and is in the administrative record that she's, for example, the fact that the vocational reviewer and the medical reviewer have agreed that travel is a material and substantial duty and that makes this at least a light duty occupation while their reviewers have said she can do sedentary. One reviewer said she can do at least sedentary, but I don't know what that, that doesn't mean she can do light. I mean, if I can run three miles, it doesn't mean I can run a marathon. So all they have in the record is that she can do sedentary, but their experts also say travel is material and substantial and travel makes this light. So as a matter of law, I think the substantive question of disability can be answered by this panel that Beth Cozy is entitled to it. The preexisting condition is the only thing that's out there that I don't, that hasn't been decided. So I don't know. And that doesn't apply to the short term, correct? Correct. Okay. And if they're correct that this court can decide the preexisting condition, I think there's no question, and maybe it's a matter of futility, to send it back to the district court because I think there's no question the preexisting condition doesn't apply. They can only point to the short term. To anything, it doesn't apply meritoriously at least because the only doctor's appointment they can appoint to in the three months prior to her, the three months that the preexisting condition reply, that doctor's appointment was June 28th, June 25th, 2008, and it simply says that Dr. Davis documented that Ms. Cozy's balance was poor but that her energy level was improving and documented her tremor. I don't see that that meets the level of providing medical treatment, care, consultation, services to her. And even if it did, it would apply to balance, not degenerative disc disease, fibromyalgia, chronic fatigue syndrome, and so forth. So I don't think that any merit to the preexisting condition argument. My only hesitation is that the district court judge didn't decide it. But on the merits of the disability, I think that there's no question that my first example, that there's the issue of the light versus sedentary. I think there's also a DuPere issue here, DuPere versus Leine case that was decided by this court a couple years ago, wherein, as I read records, the reviewing doctors, Dr. Hess, Dr. Colbell, Prudential in the denial letter, and even the district court, all said, look, let me give you specific examples. Dr. Colbell said Cozy's complaints simply are not borne out through objective evaluation. Hess said no objective basis to support Cozy's occupational impairment. Prudential said only self-reported symptoms. Based on these, Ms. Cozy's physicians have indicated she's unable to work. However, the medical data on file does not support that with objective evidence. And that's the key to the case, right? One of the keys to the case is whether there's an absolute requirement for objective corroboration. I would say that the case can be decided one step before that, based on the light versus sedentary. I think this is almost like a fallback, another way Ms. Cozy wins. Because I think it's clear by the record that the doctor and the vocational reviewer say travel is material and substantial. Travel is required by this job. Travel increases it to something higher than sedentary. The vocational reviewer says light and 20 pounds, which I can't travel to Paris with a 20-pound bag, but it's the weight of one shirt for me. But if you go by what they say, it's at least light. And if you go by what their doctor says, Dr. Achey, she's capable of at least full-time, sustainable sedentary work. She doesn't go further than that. None of the reviewers go further than sedentary, but they all put a requirement that the travel... It's like saying... It just bewilders me because the analysis keeps... It seems like it stops. They acknowledge that travel is a material and substantial duty of her job. They acknowledge that that's at light. And they acknowledge that the only thing we have here is telling them it's sedentary. But then they say that's okay. The analogy that came to my mind is, you know, firefighting is sedentary until you go down the pole. You know, once you're fighting a fire, you're fighting a fire, and that's a material part of being a firefighter. If it's a material part of being a senior marketing manager to travel internationally and abroad, you know, two to eight times a year, you can't dismiss that and say when she's not traveling, it's sedentary. So I think that by itself carries the data and is dispositive. As a backup, Duperry says if you have objectively identifiable diagnoses, which she does. She has chronic fatigue. She has fibromyalgia, degenerative disc disease, and so forth. And if those diseases are expected to cause the subjective symptoms that she's complaining about, you can't dismiss them. You have to consider them. And here, unless the policy says otherwise, and here the policy does not say otherwise, so it's very similar to Duperry in that situation. So here we've got a policy that doesn't prohibit reliance on subjective complaints. We've got evidence of her subjective symptoms. We've got evidence that these diseases do, in fact, prevent her from working from her physicians and herself and her written declarations from her colleagues. We've got evidence from her declaration and her family and colleagues about the severity of her symptoms. We've got evidence from her treating physicians that these symptoms are unable to allow her to work. So when you combine all that together with a policy that doesn't reject that, you can't ignore that part of it. And that's the core holding, in my view, of Duperry and why this is very similar to Duperry from that respect. Another issue that I would draw with the review that's been given is that there's a substantial amount of case law that says you have to consider the combination of impairments on the person's ability to function on their work capacity. And there's nowhere in the record where anyone hired by Prudential ever looked at how does A combined with B combined with C combined with D impact her ability to function. In fact, if you look at Dr. Aikie's report, it's a specific report, chronic fatigue, here's my conclusion, and so forth, one after another broken down into my conclusions. I see that my time is up. If there are no other questions, I'll sit for rebuttal. You have some additional time remaining. Thank you. Mr. Adams. Good morning. Morning. My name is Pat DiCarlo. I represent the defendants. Ms. Cozy has no lifting restrictions whatsoever. She has had nothing but completely normal musculoskeletal exams, which have noted full strength and mobility in all four of her extremities. The only argument plaintiff has that she can't travel because of a lifting restriction is based on a misreading of Dr. Aikie's report. Dr. Aikie does not impose a lifting restriction. He says in his report, which, by the way, was drafted and issued nine months before the vocational report came out, that he thought she could do sedentary work, and sedentary work was defined as being able to lift up to 10 pounds. At no time did Dr. Aikie suggest that she had a lifting restriction. And if there is a lifting restriction, we would expect to see that somewhere in her own medical records, and it's not there. Ms. Cozy has had evaluations from gastrologists, endocrinologists, cardiologists, at least two neurologists, and they've all come up with either normal findings or findings that don't explain her symptoms. And there's also substantial evidence that beyond just the lack of evidence of a cause for a disability or objective proof for a disability, Ms. Cozy has not always followed the recommendations of her treating physicians. Dr. Miller, the gastrologist, and there actually are two Dr. Millers in the case, I'm referring now to the gastrologist, recommended a small bowel x-ray. Ms. Cozy refused that. Dr. Athar, a neurologist, recommended a rheumatology consult. And what is the relevance of all of this? That she has not followed up with doctors as indicated for treatment that may resolve this question of whether she does have a disabling condition. So I disagree with the argument that this is just, is objective proof required or not, and that's the end of the analysis. Objective proof may not be required in all situations, but it's certainly a relevant factor to consider, among other factors. Other factors in this case include not following up with physicians. She says she's disabled as a result of fibromyalgia. If we are persuaded that the district court seemed to require, as a matter of law, objective evidence, would that be reversible error? I don't believe so because I believe the judge looked not only at the lack of objective, but some of the other factors as well. And it's important to look at all the factors, not just one. Objective proof may not be dispositive, but it's certainly relevant to the question of whether a plaintiff has proven their burden of proof. And the rheumatology is particularly important because that's the specialist who treats fibromyalgia. She was referred to a rheumatologist and decided not to. Let me ask this. The judge said abuse of discretion standard applies, but even if de novo applied, the outcome here would be the same. Correct. How do you do that in the context of summary judgment? If Ms. Cozy is entitled to all inferences under an abuse of discretion standard and all inferences in her favor under a de novo standard, I guess I'm trying to work out in my mind how you work that out on the basis of a summary judgment motion. These cases generally are addressed in the summary judgment context because we're looking at an administrative record. There may be arguments about the implications of what the facts mean, but the facts are essentially not in dispute. We disagree about the conclusions, but what the doctors said at different times is all documented in the record and something that the judge here was able to evaluate. But the judge did seem to look awfully hard and was unable to find objective evidence. Correct. And so if it's de novo and objective evidence is not a sine qua non of a disability claim under this policy, I'm just trying to figure out how a judge could say it's abuse of discretion and he goes through the abuse of discussion analysis and at the end he says, well, but even if it's de novo, same result. Because even under a de novo review, the lack of objective evidence is an important factor to consider. It's not the only factor. Right. But still, if someone has a claim and they have objective proof of their disability, that is a stronger claim than someone who comes in without it. So if you don't have... Is it a stronger claim or is it just a different claim? I mean, you know... But one of the things... Is a broken leg stronger than schizophrenia? Well, there are ways to diagnose schizophrenia and some conditions have some tests for them that sound a little objective. And a good example is fibromyalgia. The test for fibromyalgia is an 18-point trigger test. That's never been done on Mrs. Cozy. There are some cases where they do the 18-point trigger test. Yes, they've got it. It's somewhat subjective as to whether it prevents them from working. But it's not a situation where their claim is permanently safe from any type of outside analysis. Another example is depression. The doctor looks at the person and says they look depressed. Somewhat subjective, but at least there's some corroboration there. Here we have a case where that corroboration is lacking. And we really also don't even have a firm diagnosis. We have the term fibromyalgia used, but we have no formal fibromyalgia doses, no treatment for fibromyalgia. So how could you find that she is disabled under any standard? But the plan doesn't require a diagnosis. It doesn't require it, but it's obviously something that would be relevant to look at as part of looking at all of the factors the courts have said to consider. Of course, but it doesn't require it. Right, right. No, it doesn't require objective proof, but can I say that I have fiber? It doesn't require objective proof, and it doesn't require a diagnosis. It requires proof of disability. Right, and it's difficult to do that in this case where she's got no objective proof, no diagnosis. But your client drafted the plan. Correct. So what are we supposed to do with that? Well, you still have to prove it. Your client could have required all of that, didn't. And now you come into court arguing, well, there's no diagnosis, there's no objective evidence, there's no requirement in the plan that any of that be there. Well, there is a requirement that she meet the definition of disability under this plan. That she be disabled. That she be disabled, and what I'm trying to argue here is the medical records just don't support that she is disabled, and she cannot meet her burden of proof as a plaintiff to prove that she's disabled. And fibromyalgia is not the only issue to talk about, but when she's not treating for it at all, that is much different than other cases that have said, well, we know that there's no objective proof, but the person's still treating for this, and the doctors say that they have it. This is a situation where if she has fibromyalgia, it is reasonable to ask, why did you not follow the doctor's advice to see a rheumatologist? Why are you not treating for it? And if it's truly disabling, where is the evidence that the fibromyalgia is disabling? It's just not in the record. Another issue to discuss. That might be a question a judge could ask at a trial. A judge doesn't get to ask that on summary judgment. Well, but we would be at trial limited to the record anyway, and there's no more evidence, no more medical evidence that's going to come in other than what's in the record. She's relying on her failure to do A, B, and C, and that's not in the record, right? Did she do those things? I understand as the administrator, you can rely on what's not in the record, but once it comes to court, it seems to me if you draw inferences in favor of the claimant under a de novo standard in the face of a plan that doesn't require diagnosis, doesn't require objective evidence, and in light of the fact that you could have had her examined, for example, by a rheumatoid specialist, you chose not to, which is your right. There's no legal requirement that you do so. These are the kinds of considerations. Arguably, I'm just trying to explore this with you. The judge maybe shouldn't grant summary judgment under a de novo standard. Even in a de novo standard, the default rule is that you're still limited to the administrative record. There is some case law that says you can go outside that in special circumstances, but I would submit a trial would be of limited utility if we're looking at the administrative record and the absence of proof that's in the record now is still going to be an absence of proof. But there may be an explanation for the absence of proof. We haven't heard that in the briefing or the argument so far. I'm not sure it would show up in the briefing. I mean, she would have to explain why she didn't have this test or that test or this examination or that examination. Wouldn't that be? Well, she also had every opportunity to do that during the administrative process. She could have sent letters. She did send a lengthy statement she could have included in there. I'm choosing not to follow the advice of my doctor to follow up with a rheumatologist for X, Y, Z reason. We do have an argument, I believe, in the briefing that she couldn't afford, but she saw other doctors. She couldn't afford it. Well, she has seen. Why did she see other doctors subsequent to that? And the record does not support that. That's an argument. She lives on a golf course community in South Carolina, and the record just doesn't support that she doesn't have enough money to see a rheumatologist. But there is evidence in the record that she doesn't think that she has the fibromyalgia and that she thinks that the fatigue is the result of Enderol, which is a beta blocker. She's adjusted the dosage. You'll recall that she moved from North Carolina to South Carolina in about mid-2008 and started seeing a new primary care physician down there. And those records, if you read through them, she's reporting only mild fatigue during this important time period. And her theory about what's going on is that the Enderol that she takes for her tremors is too high of a dose, and she needs to be on a lower dose in order to help with her fatigue. Enderol is a beta blocker. It's widely prescribed. It does have a mild sedating effect. There's no evidence in the record that the Enderol had such a sedating effect that it prohibited her from work. And in the last record that we have from Dr. Miller, this is the second Dr. Miller, it seems to indicate that when they reduced the Enderol dosage that her fatigue improved. So we have not just an objective medical case. We have a case where there's a question as to diagnosis. There's no objective medical. And there are also very weak statements of support from her treating physicians. She's treated with, as the district court noted, upwards of 15 doctors. Her current primary care physician does not say that she's disabled. The primary care physician she was seeing in South Carolina believes that she's disabled. But if you read that letter, it really is just a regurgitation of Ms. Cozy's symptoms. There's no analysis of what specifically she can't do. She just recites the symptoms and says that that adds up to a disability. But if you look through the symptoms, you'll see that she says things that are contradicted by the specialists that were referred to. For example, she says that she's disabled because she can't stay awake all day long. She had extensive sleep studies that were unable to confirm why she would have daytime sleepiness. The endocrinologist, the cardiologist, the neurologist all found nothing wrong with her. Another aspect of Dr. Davis's letter is that she's forgetful. Well, she was referred by her own doctors for a neuropsychological exam and another examination by a psychologist, and they found nothing wrong with her cognitively. What they found is that she likely has a somatoform disorder where she is not having a physical cause for her fatigue, but stress is causing her a mental issue where she thinks that she has these symptoms. She was also referred to go do psychological talk therapy, which she did not do. There's been no neurological explanation for her alleged dizziness. She does have a tremor, but throughout the record, that's consistently described as mild. At one point, she says she can live with it. The tremor does increase somewhat when the enderol dosage goes down, but they seem to have found an appropriate balance for that. Ultimately, no matter what you think about the standard of review, the plaintiff bears the burden of proof in the case to show that she is disabled. Here we have a number of factors that weigh against that finding. As we've talked about, there's the lack of objective evidence, but there's also medical records that report mild symptoms. I've seen a number of these cases where the complaints are subjective, but the person is going to the doctor frequently. They're complaining of severe pain and severe fatigue. During 2009, when she was visiting with Dr. Miller, the plaintiff reported that her fatigue was on one occasion 1 out of 10, another occasion 2 out of 10, another occasion 3 out of 10. Towards the end of the year, she reported that it was improving. As I mentioned, she has only conclusory support from some of her treating physicians, not all. She was able to run her own business for apparently up to a year after she became disabled. She moved to South Carolina in mid-2008 towards the end of the summer. She continued to work, and the plan was she was going to move back to North Carolina, but she decided in April that she was disabled again, never made the move back to North Carolina. Her press release indicates that she'd been making preparations to run her own coupon business, and so when you add all those factors together, there just is not enough evidence of the disability to satisfy the plaintiff's burden of proof, even under a de novo standard. On the standard review, there's probably not much I can say that's different than what we've put in the briefing. The issue is whether the language satisfactory to prudential is sufficient for the long-term disability pieces. Some courts have said it is. Some courts have said it's not. Gallagher took issue with the phrase to us because it was not clear whether the submission goes there or what satisfactory has to be to the insurer. The language here is different, and district courts within the Fourth Circuit have been split on whether that difference is sufficient. And then on the short-term piece, the administrative service agreement has clear notice of the discretionary language, and it is incorporated by reference into the short-term plan document. So if the administrator has discretion, the review would be abuse of discretion. Correct. But if he doesn't have any, then it would be de novo. Correct. That's the bottom line. That's right. That is absolutely correct. And is there any contention as to whether or not he had discretion in this case? There is. There is. Plaintiff says that the satisfactory to prudential language is not sufficient. Defendants argue that it is sufficient to invoke discretionary review. And I'd say I have a few minutes to talk about the preexisting condition issue. But before I get into that, I do want to respond to comments that were made earlier about what would a remand look like, if we have a remand. And I think that the issues are different. If you're talking about a remand for another look under a de novo review is one thing, and the preexisting condition is different. And the reason I think it's different is because the district court did not address the preexisting condition. There is some argument that you would have further development when that comes back up, if it does come back up. Whereas the de novo thing, I think we would end up not in a different situation, and the judicial economy argues in favor of going ahead and looking at it under de novo standard, if you get to that point, so that we don't have a situation where it goes back. The district judge says, well, I sort of already said that this would be the same under the de novo standard. And so we have a similar order to what we have now, and then we have to come back on appeal, and it takes time. So you're urging us, if we decide that de novo applies, to just go ahead and decide the case ourselves? Except for the preexisting condition. Except for the preexisting condition. That's correct. I see. If I could just look at my notes. I'm sorry. To explain what the preexisting is, even knowing the court may not reach the issue. So what the language says is that a medical condition for which the claimant receives treatment, consultation, care, services, including diagnostic measures, or took medicine, or followed treatment recommended, within three months before the effective date, that condition is excluded. She was reemployed on August 4, 2008. I disagree with plaintiff's argument that she had continuous coverage, because the plan has an actively at work requirement. If you're not working 33 hours a week, you're not covered. And so when her employment terminated and she wasn't working, she was eligible to continue a disability if it was established for the disability under the plan. But once she left and came back, you have a new effective date, a new three-month period. And during that three-month period, she at minimum had a June 25, 2008 visit with Dr. Davis, where she was seen for balance problems, her energy level, and the tremor. So your contention is that a leave of absence terminates coverage? There is a definition for leave of absence, but what it says is that the leave of absence has to be agreed to in writing in advance by the employer. So if the employer says, you need to be out for three months, okay, here's where we're going to write that down. You're out for three months. Coverage doesn't end, but if the employment is terminated and there's no advance agreement in writing to come back, then it doesn't continue. It terminates, and when you're rehired, you start over, is what the plan documents say. And finally... And you want the district court to look at that in the first sentence, if we send it back? Correct. And unless there are further questions, I thank the court. Thank you very much, Mr. DiCarlo. You have just a few minutes, Mr. Adams. Thank you, Your Honor. I'll go quickly because I have a couple of things I'd like to respond to. First, I wanted to make one quick point on the long-term disability standard review issue, and the reason is because a case came out last month that I think has a lot of bearing on that. The case was called, I have it here, Gross versus Sun Life. First Circuit case? Yes, Your Honor. I think it does what I presented to the district court should be done in relooking at the language. I think the Fourth Circuit is open as to what that language means, and now the First, Second, Third, Seventh, and Ninth have found that it doesn't give discretion, and Gross does a very good job of outlining all of that. Just to respond to a couple of points, Mr. DiCarlo stated that the 18-point trigger test has never been done on Ms. Cozy. I don't see the results in the record, but there are at least a half dozen references to it having been done in the record. Dr. Hess, which is one of their reviewers, on her review of the record said, quote, primary care physician noted tender points consistent with fibromyalgia. That's on A211. In Prudential's denial, they referenced her diagnosed fibromyalgia. That's on A1000. That's all I could find in the last few minutes, but I know there are a number of other places where it's referenced as having been done. I would echo what I think the court got to in terms of why she has not followed up with as much medical care as Prudential would like. They took away both her income and her medical insurance at the same time. She does live in Myrtle Beach. She's also gone through Chapter 7 bankruptcy. I think that's in the record, too, all since this has happened. So I don't think it's particularly reasonable to ask why she hasn't gotten all this additional medical care. I may have misheard, but I thought I heard that some question as to the reason why she can't travel, but I wanted to note Dr. Davis on page 493, her former manager on 498, her former supervisor on 175, and her declaration herself on 83 through 88 all reference her inability to fly, as opposed to just maybe a lithium prescription, I believe, was referenced. With respect to the preexisting condition, I've got about a dozen arguments in the brief that I'll rest on, except for the point of saying that, and I don't know if this throws another procedural snag into the case, but that was never decided by prudential until the final denial. It wasn't decided on an earlier denial. And the Gagliano case from the Fourth Circuit held that the insurer violated 1133 by raising the preexisting condition exclusion as a new basis for termination during the final claim appeal inasmuch as it did not give an opportunity to appeal the decision, because as it was a new basis for denying, it was also an initial denial on the preexisting condition issue. So it may even, if this court doesn't decide it, the question would be whether it goes not to the district court, but also all the way back down. I see my time is up, and I thank you, Your Honors. Thank you, Mr. Adams, and we thank both counsel for your presentations. We will ask the clerk to adjourn court and stand in recess. Come down and greet counsel. This honorable court stands adjourned, sign and die. God save the United States and this honorable court.
judges: Andre M. Davis, Barbara Milano Keenan, Henry F. Floyd